Case: 23-1045     Document: 35          Filed: 06/27/2023     Pages: 18

No. 23-1045, 23-1046, 23-1047, and 23-1048

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT
# CHICAGO, ILLINOIS 60604

| | |
|---|---|
| IN RE: MICHAEL WOLF,                            )<br>                                                                )<br>        Debtor,                                         )<br>-----------------------------------------------        )<br>                                                                )<br>N. NEVILLE REID, not individually,           )<br>but solely in his capacity as Chapter 7      )<br>Trustee of the bankruptcy estate of         )<br>Michael A. Wolf, et al.,                           )<br>                                                                )<br>        Plaintiff-Appellees,                       )<br>                                                                )<br>No. 23-1045, 23-1046, 23-1047,              )<br>and 23-1048                          v.           )<br>                                                                )<br>SCOTT WOLF, MICHAEL WOLF, et al.,   )<br>                                                                )<br>        Defendants-Appellants.                  ) | Appeals from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division<br><br>No. 1:18-cv-07952<br>No. 1:18-cv-07953<br>No. 1:19-cv-08154<br>No. 1:19-cv-01978<br>Judge John J. Tharp, Jr.<br><br><br>Original proceedings from the United<br>States Bankruptcy Court for the<br>Northern District of Illinois<br><br><br>No. 16-ap-00066<br>No. 16-ap-00482 through 486<br>Judge Deborah L. Thorne |

--------------------------------------------------------------------------------------------------------------------

# APPELLANTS SCOTT WOLF AND MICHAEL WOLF's LETTER OF SUPPLEMENTAL AUTHORITY PER FEDERAL RULE OF APPELLATE PROCEDURE 28(j) AND LOCAL CIRCUIT RULE 28(e)

--------------------------------------------------------------------------------------------------------------------

Michael Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
404-654-0513
wolflegalusa@gmail.com

*Michael Wolf appearing pro se*

Scott Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
304-769-9828
scottwolf.0330@gmail.com

*Scott Wolf appearing pro se*

## LETTER OF SUPPLEMENTAL AUTHORITY

On June 22, after Appellant's reply brief was filed on June 9, *this Court* entered its opinion in *Douglas F. Mann v. LSQ Funding Group* (Case 22-2436)[1] ("Because the transaction had no effect on Engstrom's bankruptcy estate, the Bankruptcy Code's avoidance provisions play no role here, and we affirm.").

Since the MMQB-Business belonged to Zig-Zag, it was **never** *an interest of the debtor in property*. Even if the MMQB-Business was considered the debtor's alter ego, the MMQB-Business *would not have been property of the estate but for the transfer*, since all of the debtor's personal property, acquired subsequent to the marriage, was, is and would have been encumbered by the Non-Debtor-Spouse's 100% interest in all marital property.

The alleged transfers are not relevant to the Trustee and had no effect on the Debtor's estate.

The Non-Debtor-Spouse put the Trustee on notice that all marital property was hers. The divorce court awarded all marital property to her. **The Debtor was not awarded any property.**

In *LSQ Funding*, *this Court* treated 547, 544 and 548 claims identically[2], and found that only transfers of property that *would have become* property of the estate may be avoided[3].

---

[1] Attached as Exhibit A.

[2] "Even if this were enough to preserve those claims for appeal, §544(b) contains the same "interest of the debtor in property" prerequisite as §547 and §548."

[3] " "Section 548's phrase 'an interest of the debtor in property,'" consistent with our reading of the phrase in §547, "has generally been held to be the equivalent of 'property of the estate[,]'" encompassing "only those [transfers] *that affect property that would have been property of the estate but for the transfer*." 5 Collier on Bankruptcy ¶ 548.03 (16th 2023). Several factors convince us that this reading of § 548 is correct. "

The fraudulent transfers alleged by the Trustee did not diminish the Debtor's estate – as said property would have been encumbered by the Non-Debtor-Spouse's marital interest as of the divorce filing date (preceding bankruptcy), had no transfers occurred.

The Trustee accepted that the Non-Debtor-Spouse was awarded all marital property, therefore, *LSQ Funding* instructs that the Trustee can't prevail on his 544 and 548 causes of action, because the MMQB-Business (or any other marital property) would not have become property of the bankruptcy estate, **had it not been transferred**, due to the Non-Debtor-Spouse's interest in said property remaining undefeated, thus preventing said property from becoming property of the bankruptcy estate, even if it hadn't been transferred (see *Thorpe*).

The Trustee can't prevail on any fraudulent transfer claims, because the [bankruptcy] estate was not diminished (as only the [marital] estate and therefore only the Non-Debtor-Spouse's interest could have been diminished) by any alleged fraudulent transfers.

Dated: June 27, 2023

Prepared By:

Scott Wolf (304-769-9828)
scottwolf.0330@gmail.com
320 Central Avenue, Unit 141
Sarasota, Florida 34236

Michael Wolf (404-654-0513)
wolflegalusa@gmail.com
320 Central Avenue, Unit 141
Sarasota, Florida 34236

Respectfully Submitted,

/s/Scott Wolf
Scott Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
304-769-9828
scottwolf.0330@gmail.com

/s/Michael Wolf
Michael Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
404-654-0513
wolflegalusa@gmail.com

## CERTIFICATE OF SERVICE

I, Scott Wolf, hereby certify that I caused a true and correct copy of the foregoing *APPELLANTS SCOTT WOLF AND MICHAEL WOLF's LETTER OF SUPPLEMENTAL AUTHORITY PER FEDERAL RULE OF APPELLATE PROCEDURE 28(j) AND LOCAL CIRCUIT RULE 28(e)*, and the documents referred to therein, to be served on the parties listed below via third-party commercial carrier and/or mail, and/or via email, and/or via fax, as well as electronically via the Court's CM/ECF system (all as indicated below on the service list), on the 27th day of June, 2023.

**SERVICE LIST**

via ELECTRONIC MAIL (and via CM/ECF where noted):

| | | |
|---|---|---|
| N. Neville Reid | CM/ECF | nreid@foxswibel.com |
| Daniel Patrick Dawson | CM/ECF | adrag@nisen.com, ddawson@nisen.com |
| Catherine L. Steege | CM/ECF | docketing@jenner.com |
| | | csteege@jenner.com |
| Faye B. Feinstein | | faye.feinstein@quarles.com |
| Hailey Ann Varner | | HVarner@perkinscoie.com |
| Travis Jon Eliason | | Travis.Eliason@quarles.com |
| Holly A. Harrison | | hollyharrison@hlawllc.com |
| Jason Fitterer | | JasonFitterer@hlawllc.com |
| United States Trustee | | pat.s.layng@usdoj.gov |

Dated: June 27, 2023                                            Signed,

/s/Scott Wolf<br>
Scott Wolf, <i>pro se</i><br>
320 Central Avenue, Unit 141<br>
Sarasota, Florida 34236<br>
304-769-9828<br>
scottwolf.0330@gmail.com

No. 23-1045, 23-1046, 23-1047, and 23-1048

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT
# CHICAGO, ILLINOIS 60604

| | |
|---|---|
| IN RE: MICHAEL WOLF,                              ) | Appeals from the United States District |
|                                                   ) | Court for the Northern District of |
| Debtor,                                           ) | Illinois, Eastern Division |
| ------------------------------------------------  ) | |
|                                                   ) | No. 1:18-cv-07952 |
| N. NEVILLE REID, not individually,                ) | No. 1:18-cv-07953 |
| but solely in his capacity as Chapter 7           ) | No. 1:19-cv-08154 |
| Trustee of the bankruptcy estate of               ) | No. 1:19-cv-01978 |
| Michael A. Wolf, et al.,                          ) | Judge John J. Tharp, Jr. |
|                                                   ) | |
| Plaintiff-Appellees,                              ) | |
|                                                   ) | Original proceedings from the United |
| No. 23-1045, 23-1046, 23-1047,                    ) | States Bankruptcy Court for the |
| and 23-1048                    v.                 ) | Northern District of Illinois |
|                                                   ) | |
| SCOTT WOLF, MICHAEL WOLF, et al.,                 ) | No. 16-ap-00066 |
|                                                   ) | No. 16-ap-00482 through 486 |
| Defendants-Appellants.                            ) | Judge Deborah L. Thorne |

# EXHIBIT A

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 22-2436

DOUGLAS F. MANN,

*Appellant*,

*v.*

LSQ FUNDING GROUP, L.C.,

*Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 21-cv-1070-bhl — **Brett H. Ludwig**, *Judge*.

ARGUED FEBRUARY 16, 2023 — DECIDED JUNE 22, 2023

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Weeks before Engstrom, Inc. declared bankruptcy, its CEO orchestrated a payoff agreement between one of its existing creditors, LSQ Funding Group, L.C., and a new lender, Millennium Funding. Pursuant to the agreement, Millennium paid Engstrom's debt to LSQ, replacing LSQ as Engstrom's creditor. In exchange, LSQ released the entirety of its interest in Engstrom's accounts, which

immediately went to Millennium. At that point, any payment on those accounts would go to Millennium instead of to LSQ.

Once Engstrom filed for bankruptcy, the Trustee of its estate sued LSQ in an attempt to avoid the payoff. As part of the suit, the Trustee alleges that the accounts Millennium purchased were worthless and that LSQ conspired with Engstrom to leave Millennium with the phony accounts when Engstrom's business fell apart. As the Trustee sees it, Engstrom used the new financing Millennium provided to pay off LSQ, keep them quiet about the fake accounts, and keep its Ponzi scheme running just a little while longer.

Accordingly, the Trustee argued that the payoff agreement was avoidable as both a preferential and a fraudulent transfer. The bankruptcy court dismissed the suit, holding that the payoff agreement was not avoidable because it did not qualify as a transfer of "an interest of the debtor in property." 11 U.S.C. §§ 547, 548. The district court held the same. Because the transaction had no effect on Engstrom's bankruptcy estate, the Bankruptcy Code's avoidance provisions play no role here, and we affirm.

## I. Background

### A. Factual History

LSQ Funding Group, L.C., provides invoice-factoring services to other businesses. That means it contracts with companies that need to collect on certain accounts, fronts the money for those accounts, acquires the legal rights to the accounts, and then collects on them for a fee. In June 2018, LSQ had an agreement to provide factoring services for Engstrom, Inc. (hereafter, "the Debtor"). According to the Trustee, that agreement was a sham, part of a larger fraud scheme run by

the Debtor's CEO, Cheri Campion. Because this is an appeal from a grant of summary judgment, we must assume those allegations to be true to the extent they are supported by the record, but "we are not vouching for the objective truth of every fact that we must assume to be true for purposes of the appeal." *Freelain v. Village of Oak Park*, 888 F.3d 895, 898–99 (7th Cir. 2018).

The Trustee alleges that Campion ran a Ponzi scheme by entering into factoring agreements based on phony accounts. He claims that she fabricated invoices from fake companies as if they owed money to the Debtor, sold those invoices to companies like LSQ through factoring agreements, and then paid the invoices herself using money from other fraudulent agreements. According to the Trustee, this created the appearance that the Debtor was a flourishing business, even as it hurtled towards insolvency. But Millennium asserts that LSQ caught on to the fraud and terminated its agreement with the Debtor in January 2020. With the contract terminated, the Debtor owed LSQ roughly $10.3 million.

Of course, as is often the case in fraud schemes like these, the Debtor did not have $10.3 million. The Trustee believes that Campion's solution was to team up with LSQ to defraud a new company and use the proceeds to pay the $10.3 million debt. The Debtor chose Millennium Funding to take LSQ's place. Millennium would pay the $10.3 million to LSQ directly, and LSQ, in turn, agreed to release any rights it had in the Debtor's invoices, leaving them free for Millennium. But Millennium claims that its purchase was worthless because the Debtor had fabricated its accounts. And within three months of this transaction, the Debtor filed for bankruptcy.

**B. Procedural History**

The Trustee of the Debtor's estate brought this case, seeking to avoid the $10.3 million payment as a preferential transfer under § 547(b) or a fraudulent transfer under § 548(a)(1).[1]

The bankruptcy court entered summary judgment for LSQ based on the so-called "earmarking doctrine." This widely recognized doctrine exempts from § 547(b)'s avoidance power financial transactions like the payoff agreement here—where one creditor gives a debtor "earmarked" funds to pay off a specific debt in full, thereby assuming the original creditor's position.[2] Applying this doctrine, the bankruptcy court concluded that the payment from Millennium to LSQ was not a transfer of an "interest of the debtor in property," as required by § 547(b) and § 548(a)(1). Accordingly, it found that the payment was not avoidable as either a preferential or a fraudulent transfer. The Trustee appealed, and the district court affirmed. This appeal followed.

## II. Analysis

"A summary judgment in a bankruptcy adversary proceeding is treated as any other summary judgment, so our review is de novo." *In re hhgregg, Inc.*, 949 F.3d 1039, 1044 (7th Cir. 2020). All reasonable factual inferences are made in favor

---

[1] The Trustee subsequently added a claim that the transaction was avoidable as a state-law fraudulent transfer under 11 U.S.C. § 544(b)(1) and Wis. Stat. § 242.04(1).

[2] We tread carefully in defining the doctrine, as neither the parties nor our sister circuits agree on whether this is an equitable exception to the Bankruptcy Code or an interpretation of the Code's plain language. *Compare In re Adbox, Inc.*, 488 F.3d 836, 842 (9th Cir. 2007) *with In re ESA Env't Specialists, Inc.*, 709 F.3d 388, 395 (4th Cir. 2013).

of the non-movant—in this case, the Trustee. *Smith v. Cap. One Bank (USA), N.A.*, 845 F.3d 256, 259 (7th Cir. 2016). Having made those inferences, "[s]ummary judgment is appropriate if there is no genuine dispute of material fact and the nonmoving party is entitled to judgment as a matter of law." *In re Equip. Acquisition Res., Inc.*, 803 F.3d 835, 839 (7th Cir. 2015).

The parties focus, as the courts below did, on the "earmarking doctrine." We need not focus on the "earmarking doctrine" because a careful reading of the Bankruptcy Code's text and the application of our precedent resolve this case.

### A. "An Interest of the Debtor in Property"

We begin with preferential transfers under § 547. Section 547 provides a mechanism for the trustee of a bankruptcy estate to "avoid"—claw back—transactions that favored certain creditors over others in the months before the debtor filed for bankruptcy. But § 547 only allows "the trustee … [to] avoid … transfer[s] of *an interest of the debtor in property*." (emphasis added). That language is key to this case.

In interpreting this phrase, the Supreme Court has explained that "the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors." *Begier v. I.R.S.*, 496 U.S. 53, 58–59 (1990). Accordingly, "interest of the debtor in property" is "best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 564 (7th Cir. 2001) (quoting *Begier*, 496 U.S. at 58).

In *Matter of Smith*, we used two approaches to determine whether a transfer had affected "an interest of the debtor in

property," asking: (1) whether the debtor can exercise control over the funds transferred; and (2) whether the transfer diminishes the property of the estate. *See* 966 F.2d 1527, 1535 (7th Cir. 1992). The goal of the two tests is the same: to determine whether the transfer took something from the pool of assets that would otherwise have gone to creditors. *See Matter of Wagenknecht*, 971 F.3d 1209, 1213 (10th Cir. 2020) (employing both tests for this purpose).

A debtor exercises control over transferred funds where he "determines the disposition of the funds *and* designate[s] the creditor to whom payment is made." *Matter of Smith*, 966 F.2d at 1535 (citations omitted and emphasis added). This is often a fact-intensive inquiry. As exemplified in *Warsco*, we must consider the totality of circumstances in determining control to ensure that debtors do not avoid liability by cleverly restructuring transactions. 966 F.2d at 1535. That being said, in this case, we are confident that a reasonable jury could find that Campion chose LSQ as the beneficiary of its new financing from Millennium and insisted on the transfer to perpetuate its Ponzi scheme. But there is scant evidence in the record of the second part of the *Matter of Smith* control analysis—that the Debtor, rather than Millennium or LSQ, had the ultimate ability to "determine[] the disposition of the funds"

Case: 23-1045     Document: 35     Filed: 06/27/2023     Pages: 18

or of the accounts themselves.³ Nor did the Trustee at any point before this Court argue that it met this standard. ⁴

At any rate, we do not need to decide the exact question of control here; a diminution of estate analysis shows plainly that the transaction at issue here did not involve "an interest of the debtor in property." The parties agree that neither the $10.3 million nor the accounts sold would have been part of the Debtor's estate. The funds never actually passed through the Debtor's accounts. And the change in creditors was instantaneous—as soon as LSQ released its security interest in the Debtor's invoices, Millennium received its security interest in those same invoices, making Millennium, not the Debtor, the owner of the accounts. As we described in *Matter of Smith*, Millennium "substitute[d] itself for the original creditor," LSQ, in every way. 966 F.2d at 1533. Our understanding is only

---

³ In fact, the Trustee himself explained that the accounts were under the "absolute ownership" of LSQ before ownership was "absolute[ly] transfer[red]" to Millennium. He described this transfer of ownership as "simultaneous[]" with the payment from Millennium to LSQ.

⁴ That makes sense when we read "interest of the debtor in property" as "coextensive with … [its] use[] in 11 U.S.C § 541(a)(1)," as the Supreme Court requires. *Begier*, 496 U.S. at 59 n.3. Section 541 includes in the estate "all legal and equitable interests of the debtor in property." There is no evidence in the record that the Debtor had actual rights at law or equity to the $10.3 million or the accounts payable at the time of the transfer. *Contra Warsco*, 258 F.3d at 564 (remanding for further consideration on the control issue where the transfer involved assets legally owned by the debtor, meaning that the sale price of those assets could become part of the estate, and therefore the transfer may have involved "an interest of the debtor in property"). While Campion's alleged masterminding of the transfer might be enough to state a fraud claim, it is not enough to bring the transaction within the reach of the Bankruptcy Code.

emphasized by the Trustee's admission at oral argument that this transaction had "no adverse effect, no diminution … on other creditors."

Because the transfer at issue did not involve "an interest of the debtor in property," it cannot be avoided as a preferential transfer under § 547.

### B. Application Throughout the Bankruptcy Code

Nevertheless, the Trustee contends that these considerations are relevant only to the avoidance of preferential transfers under § 547. According to the Trustee, fraudulent transfers under § 548 do not require control over the transferred property or diminution of the estate; fraud alone is enough to make them avoidable. But the plain language of § 548 refutes this argument. Just like § 547's avoidance provision for preferential transfers, § 548(a)(1) permits "[t]he trustee [to] avoid any transfer … of *an interest of the debtor in property*" that meets certain fraudulent criteria.[5] (emphasis added). So each of the Trustee's attempts to avoid this payment turn on the same question: whether the payoff agreement constituted an "interest of the debtor in property."

"Section 548's phrase 'an interest of the debtor in property,'" consistent with our reading of the phrase in § 547, "has generally been held to be the equivalent of 'property of the estate[,]'" encompassing "only those [transfers] that affect property that would have been property of the estate but for

---

[5] As noted above, the Trustee also brought claims under § 544(b), but only mentions them in passing before this Court. Even if this were enough to preserve those claims for appeal, § 544(b) contains the same "interest of the debtor in property" prerequisite as § 547 and § 548. We read that language identically across all three provisions.

the transfer." 5 Collier on Bankruptcy ¶ 548.03 (16th 2023). Several factors convince us that this reading of § 548 is correct.

First, "[i]n general, we presume that 'identical words used in different parts of the same act are intended to have the same meaning.'" *White v. United Airlines, Inc.*, 987 F.3d 616, 623 (7th Cir. 2021) (quoting *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990)). The courts that have considered the issue have held, in line with this general presumption, that the antecedent requirement for a transfer of "an interest of the debtor in property" should be applied identically across the avoidance provisions. *See In re Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987) (interpreting "property of the debtor" to require diminution of the estate under both § 547 and § 548); *In re Chuza Oil Co.*, 639 B.R. 586, 604 (B.A.P. 10th Cir. 2022); *In re TriGem Am. Corp.*, 431 B.R. 855, 864 (Bankr. C.D. Cal. 2010); *In re Pearlman*, 460 B.R. 306, 313 (Bankr. M.D. Fla. 2011) (equating identical language in § 544 and § 548); *In re Loggins*, 513 B.R. 682, 697 n.51 (Bankr. E.D. Tex. 2014); *In re Baldwin*, 514 B.R. 646, 658 (Bankr. D. Utah 2014); *In re Dependable Auto Shippers, Inc.*, No. AP 17-3086, 2018 WL 4348049, at *6–7 (Bankr. N.D. Tex. Sept. 7, 2018); *In re Dandridge*, No. 17-60578, 2020 WL 2614615, at *2 (Bankr. W.D. Va. Jan. 31, 2020).

And although it has never confronted this specific question, controlling precedent from the Supreme Court supports identical readings of "interest of the debtor in property" throughout the Bankruptcy Code. As recently as 2018, the Court discussed §§ 544(a), 545, 547(b), and 548(a)(1) collectively as "avoiding powers," noting parallel language between the provisions. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 888, 893–94 (2018) (discussing the avoiding powers in terms of their exceptions in § 546). And a

consistent interpretation aligns with the Supreme Court's holding that "[e]quality of distribution among creditors is a central policy of the Bankruptcy Code." *Begier*, 496 U.S. at 58; *see also Chase*, 813 F.2d at 1181 ("The purpose of avoidance of both types of transfers [preferential and fraudulent] is to prevent a debtor from diminishing, to the detriment of some or all creditors, funds that are generally available for distribution to creditors."); 5 Collier on Bankruptcy ¶ 548.03 (referring to the "policy behind section 548" as "protecting and conserving *the debtor's estate* for creditors" (emphasis added)).

By focusing on diminution of the estate, our reading of § 548 properly rejects attempts to avoid transfers "where creditors would not otherwise have any reason or expectation to look to the assets transferred." *In re TriGem Am. Corp.*, 431 B.R. at 864; *see also* 5 Collier on Bankruptcy ¶ 548.03 ("[I]f a third party makes a transfer or incurs an obligation for the debtor's benefit, there is no fraudulent transfer because the third party's property typically would not become an estate asset and would not be available to the debtor's creditors."). Indeed, it seems that accepting the Trustee's interpretation here would place us in direct tension with the Code's focus on "equality of distribution among creditors." *Begier*, 496 U.S. at 58. The Trustee asks us to avoid the $10.3 million transfer, but that transfer went directly from Millennium to LSQ. Although the Trustee contends that avoidance would somehow make the transferred funds part of the Debtor's estate, he did not explain how. After all, the $10.3 million never passed through the Debtor's accounts in the first place, nor is there any suggestion in the record that Millennium would have paid the Debtor directly if the contract had not worked out with LSQ. Without some evidence connecting the transfer to the Debtor's estate, we can see only one way to reverse the

payoff agreement alleged in this case: returning $10.3 million to Millennium. Put differently, avoiding this transfer would benefit the allegedly defrauded creditor and no others. That perverse result further assures us that § 548's use of "interest of the debtor in property" is identical to its use in § 547.

Finally, this decision aligns comfortably with those of our sister circuits, several of which have held or suggested that, even in the Ponzi scheme context, outright fraud alone cannot bring a transaction within the avoiding powers of the Bankruptcy Code—the baseline avoiding requirements of the statute must still be met. *See In re Whitley*, 848 F.3d 205, 208 (4th Cir. 2017) (where fraudulent transactions in the course of a Ponzi scheme were not "transfers" within the meaning of § 548, the transactions could not be avoided by the Trustee); *In re Fair Fin. Co.*, 13 F.4th 547, 553 (6th Cir. 2021), reh'g denied (Oct. 5, 2021) (similar holding in the Ponzi scheme context based on § 544 and the Ohio state law definition of "transfer"); *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir. 2020) (similar holding in the Ponzi scheme context based on Florida state law definition of "transfer," and acknowledging that this state law has similar avoidance requirements to § 548).

The Trustee does not address any of these points. Instead, he maintains that considering control and diminution of the estate in the context of § 548(a) creates conflict elsewhere in the provision. He points to the "good faith" defense under § 548(c), for example, as well as the distinctions between actual fraud under § 548(a)(1)(A) and constructive fraud under

§ 548(a)(1)(B).[6] We see no conflict between these provisions and our interpretation of "an interest of the debtor in property." In fact, our opinion does not impact those provisions at all—Congress clearly included powerful tools against debtor fraud within § 548, and they should be enforced whenever applicable. We address only the antecedent question of what kinds of transfers affect the bankruptcy estate in the first place. Within that subset of transfers, questions about good faith, actual fraud, and constructive fraud under § 548(c), § 548(a)(1)(A), and § 548(a)(1)(B), respectively, determine which transfers can be avoided.

Because the transaction in this case had no impact on the property of the Debtor, this is not the type of fraud governed by the Bankruptcy Code. If fraud occurred, Millennium's relief should come from damages in a separate fraud suit.[7]

### III. Conclusion

Attempts to avoid both preferential and fraudulent transfers require a showing that the transfers involved "an interest of the debtor in property." The Trustee in this case concedes that the transfer at issue here did not diminish the Debtor's

---

[6] The Trustee also focused on § 547(c)'s "new value" exception to preferential transfers as a statutory replacement for any requirement of diminution of property in the avoidance statutes. But this argument was never made below and was therefore, at a minimum, forfeited. *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc). The Trustee has given no indication that these are the kind of "exceptional circumstances" under which we are willing to review a forfeited argument. *Id.* And so we need not address this here.

[7] As we understand it, fraud claims brought by Millennium against LSQ and Engstrom are ongoing in Florida state court.

Case: 23-1045   Document: 35   Filed: 06/27/2023   Pages: 18

No. 22-2436                                              13

estate. Under our established precedent, this means he failed to show that the transfer involved "an interest of the debtor in property." Accordingly, he cannot avoid the $10.3 million transaction, and the judgment of the district court is

AFFIRMED.